v. McCormley, Case No. 16-4255. May I proceed, Your Honor? Yes, you may. May it please the Court, Counsel. My name is Merle Royce. I represent the appellant, Sherwin Brook, who is trustee of the David North II Trust. As you know, my principal argument in terms of jurisdiction, not personal jurisdiction, but the issue has been raised with respect to subject matter jurisdiction, and I'll address that first. The Court below ignored the issue, and I think this Court should too. The issue, in our opinions, contrived. The Cortina Corporation, with non-diverse situs, was dissolved in 1998 administratively. Its affairs were wound up. It was defunct even before that dissolution, and the shares of the company passed to the trust. Taffney and Bosco argue that because Arizona law provides that a corporation which can sue or be sued after its dissolution, that therefore Cortina was the proper party. When the issue first arose, we substituted in Mr. Brook, who's the real party in interest, under Coleman v. New York merchants in Arizona case, recognizing that the provisions of this statute are broader than represented by Taffney and Bosco. It provides that officers, directors, or shareholders can sue for the defunct or dissolved corporation. Nevertheless, Taffney and Bosco said or argues this case should be dismissed, and the Court doesn't have jurisdiction because jurisdictions decided at the time of the filing of the complaint. We believe that the Newman-Green decision obviates that complaint. It expressly recognized an exception to the usual rule, where, as in this case, it would simply result in a dismissal and a refiling, and that the practical circumstances dictated continuation of the action. The Supreme Court affirmed the embanked decision by this court, and extended it. I'm going to stop you, please, Mr. Roy, because there are a couple of questions I'd really like to get into. There's a fairly substantial line of authority rejecting the notion that a lawyer's representation of an out-of-state client gives rise to personal jurisdiction in the client's home state. Isn't there? Well, if you're referring to the ALR article on which the court in Newman relied, yes, they called it the majority rule, and they said without some other act of solicitation, there couldn't be jurisdiction. We believe that that's improper under the Supreme Court's decisions with respect to personal jurisdiction. It's a simplification and a mechanical test, which was condemned 80 years ago in International Shoe versus Washington. The Supreme Court jurisdiction requires in excess of three things, the forum, the defendant, and the cause of action. We believe we've shown each of those items here. First of all, the Illinois long-arm statute provides for the assertion of jurisdiction for the making or performance of a contract with a substantial connection to this state. Second, the assertion of jurisdiction is a matter of state interest and dispute. That goes back to International Shoe versus collection of taxes. It goes back to the insurance case that was shortly decided after that. It goes back to McGee, which recognizes the interest of the state in protecting it. There is cases that recognize that not only protecting residents of the state is proper state interest, but protecting the integrity of transactions that occur within the state. In this case, and in that ALR annotation, the contacts between attorneys and the non-resident attorney and the client are typically treated as routine, incidental. Plus, those courts also treat the residence of the client as simply a fortuity. That's not what the Supreme Court cases suggest. In International Shoe, the language was, and I'll quote it. I think, counsel, rather than going back to International Shoe, you should begin with Walden, which is a more recent case. Walden is an extension of the Dane Club case, which recognized the unilateral activity of the plaintiff alone was insufficient. The Walden case talks about the necessity of contacts with the forum state itself. By the defendant, yes. Rather than the defendant's contacts with someone in the forum state. It talks about contacts with the state, as did International Shoe. But those contacts are such and indicate a purposeful availance. I'm quoting from Walden. The plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum state that is the basis of jurisdiction over him. In other words, contact with the forum state, the defendant needs to have reached out to the state to do business there, as opposed to just having a contract with someone in the forum state. In this case, the contract was sent and executed in Illinois, invoking Illinois law in terms of its legality. Money was sent from Illinois to Arizona. Those are precisely the contacts that are enumerated in the Illinois statute. The making of a contract, the performance of the contract. The contract was not performed here. It was. It's a bilateral contract. It required performance by Mr. Brook. Mr. Brook sent money on several occasions to Arizona and entered into an agreement which provided a continuing obligation to do so as fees increased. The fact that injury was felt here isn't ever sufficient in a contract case like this. The fact that they suffered the monetary loss here, your client. No. I'm not arguing injury. That's over on the court. Right. You just referenced the money, the payments that were made for legal bills. Yes, but. That's not sufficient to confer personal jurisdiction over an out-of-state lawyer and law firm. Seeking money in Illinois. Having a right to compel the payment of money in Illinois. That's invoking Illinois law. And the Illinois. And purposely availing oneself. Doing business here. This is not like a case like Walden where the injury occurred in Georgia. And he tries to sue in Nevada. That's the sort of unilateral activity that Dane Klum and Walden are directed at. This is more like Burger King where you have a contract. A bilateral contract between two entities where each are rendering performance in their separate jurisdictions. And in that regard, we think when we satisfy the operative provisions of the statute, the contacts identified in the statute. We're entitled to sue here. Certainly, if they had come and tendered the contract here and we had executed it here, you wouldn't have a trouble with that jurisdiction. Because physical appearance in Illinois is not necessary. This court said it time and time again. The Supreme Court said it. So why, when the operative act that creates the relationship occurs in Illinois. And the last act, for purposes of conflict of law, occurs here. I notice my light's on. I'll reserve my time, please. Thank you. Mr. Fischbach. Good morning, and may it please the court. My name is William Fischbach, and along with Stephen Swofford, we represent the appellees in this case. Attorney Jay Lawrence McCormley and the law firm Tiffany Ambosco, PA. I think a very brief recitation of the undisputed facts in this case demonstrates very succinctly why personal jurisdiction was lacking in Illinois. This is a case in which a dissolved Arizona corporation, Cortina Financial, engaged an Arizona law firm initially to defend a quiet title lawsuit filed in Maricopa County, Arizona, that pertained to real property in Arizona. That was back in 2001. That lawsuit was subsequently dismissed, and again in 2005, Cortina engaged the Arizona law firm once again to analyze issues related to a ground lease for a driveway adjacent to that real property in Maricopa County, Arizona. And there was a suggestion at the time that the Arizona corporation could pursue a nonjudicial foreclosure under Arizona's deed of trust statutes to foreclose on the real property that was secured by that ground lease. And in 2013, the Arizona corporation engaged the Arizona law firm to conduct that nonjudicial foreclosure. Subsequently, the Arizona law firm realized that the prospect of the foreclosure was both probably legally inadvisable and potentially represented a conflict of interest, so they withdrew from the representation. It should also be noted that this Arizona corporation, 100% of its shares are owned by an Arizona trust, the David A. North II Trust. The beneficiaries of that trust have been residents of Arizona since the mid-1980s. The word Illinois did not appear once in that recitation of the facts, and that's why Illinois lacks personal jurisdiction in this case. I agree with Mr. Royce's assertion that the trinity of personal jurisdiction is made up of the forum, the defendant, and the cause of action. But when you look at those three components, all of those clearly implicate Arizona. The defendants here are Arizona citizens. The forum in which they were engaged to perform legal services was Arizona. And the causes of action in this case, we have one for negligence, breach of contract, and breach of fiduciary duty. But those are all really legal malpractice claims. They all pertain to services the defendants were engaged to perform in Arizona. So if we look at the cases of Walden v. Fiore and then the subsequent Seventh Circuit decision in advanced tactical, there can really be no question that the only link to Illinois in this case is that the trustee of this trust happens to have an office here in Chicago. The trustee was also at one time the president of the defunct corporation. That's correct. He was an officer in some capacity. I think the engagement letters were signed in this capacity as secretary or treasurer. But I would agree with that, Your Honor, that the trustee was an officer of the defunct corporation. But even that, in light of Walden and advanced tactical, that alone would not confer personal jurisdiction in Illinois. Does the record speak to the back story of why a local Arizona financial firm would have a president in Illinois and a trustee for the trust that holds the shares to the corporation would have a trustee located in Illinois? That doesn't make any sense to me. It does, Your Honor, because initially the district court realized there appeared to be a defect in diversity jurisdiction. So the original plaintiff, Cortina, filed a supplemental jurisdictional statement, which actually gave some very illuminating back story on the trust in the corporation. And it appears that when the trust was formed, it was an Illinois trust, and the beneficiaries were Chicago residents. They subsequently relocated to Arizona in the mid-1980s, and then the trust itself was made an Arizona trust in the Maricopa County Superior Court in 2011. So the party started out here in Chicago, and it would appear that they retained the services of Mr. Brook, who had served as the trustee and officer of this corporation for many years. So that's the connection, Judge. But long since reconstituted in Arizona? I would say so, Judge, definitely. I really feel that the appellants in this case failed to grasp that Walden was a bit of a game changer, not maybe to the extent of an Iqbal or a Quambly, but it represented a very significant course correction in the law of personal jurisdiction, I think particularly in the light of the Calder v. Jones, the Partridge family case. There had been kind of a creep over the years. Purposeful availment. Precisely, as to what got you personal jurisdiction. And Walden was a bit of a wake-up call that said unequivocally that the plaintiff cannot be the only link with the foreign state. And every issue that the appellants raise here in terms of any supposed links to Illinois, they're all permutations or manifestations of the fact that Mr. Brook just happens to be here in Illinois. I wanted to ask you something a little different. Is there really a doubt under Arizona law that Brook, as trustee, can sue on behalf of Cortina?  I do believe that as the trustee and, frankly, probably as an officer of the defunct corporation, he has standing, if you will, to be a real party and interest under Rule 17. No question about that, Judge. But, again, being the real party and interest under Rule 17 doesn't necessarily confer personal jurisdiction, and I think that's where there's a divergence of opinion between myself and my co-counsel on the other side there. The appellants also do not distinguish the Seventh Circuit case of Cote v. Waddell, which is an older case. It's a 1980s case, but it is really consistent, I think, with Walden in that it held that the fact that an out-of-state attorney was retained to perform – well, it was a case in which a Wisconsin resident engaged a Michigan attorney in a medical malpractice case to sue a Michigan doctor. And as in most cases, there's an engagement letter that's signed by the plaintiff in Wisconsin and the defendant lawyer in Michigan. The plaintiff in Wisconsin pays a retainer to the lawyer in Michigan, and the court in Cote held very unequivocally that those actions were not enough to confer personal jurisdiction. But those are the same actions that the appellants keep pointing to in this case, and they do – You know, it seems to me that Cote could arguably be distinguished on the ground that it was decided as a matter of statutory interpretation, you know, of the state long-arm statute in question, rather than as a matter of due process. But I would agree with you that the logic of the analysis would be the same either way. Well, and if I could frankly disagree with you on that, Judge, I think Tim Burrow makes very clear that the analysis of personal jurisdiction – well, the long-arm statute is coterminous with the due process clause of the 14th Amendment. So whatever jurisdiction the long-arm statute confers, it cannot have any greater width or expansiveness that goes beyond the 14th Amendment. So whether we're looking at – Yeah, but that's why I say the logic of the analysis is the same. Yes, Judge. You know. The analysis is the same. We're agreeing with each other. I'm just mentioning. Yes, Judge. I'm just helping. I'm sorry. Go ahead. No, no, nothing. The analysis is the same. You know, subject to any questions on the issue of personal jurisdiction, I will touch very briefly on the issue of subject matter jurisdiction. Candidly, I don't think it's necessary for the Court to resolve this case on the basis of subject matter jurisdiction. I think the issue of personal jurisdiction is really what the Court is focused on here and what is clearly lacking. On the issue of subject matter jurisdiction, the lawsuit was initially brought in the name of Cortina, which is a defunct Arizona corporation. The defendants themselves are Arizona citizens, and Judge Cannelli and the district court recognized sua sponte that that presented a problem for purposes of diversity jurisdiction. So the appellants basically did a party swap. They swapped Mr. Brook in his capacity as the trustee for the trust that owns 100% of the shares of this corporation as the real party in interest under Rule 17. And I will certainly grant the appellants the fact that the Supreme Court case of Newman v. Green certainly allows the practice of dismissing non-diverse, dispensable parties at the district court and even on appeal to preserve diversity jurisdiction. What Newman v. Green did not do was sanction what the appellants did in this case, which is do a wholesale switch out of one party for another. And in our brief, we cited the case, the NAACP Special Contribution Fund. That's a district court case out of Ohio, but it actually does cite cases from the 2nd, 3rd, and 5th circuits, which all support the position we are advocating, which is you can use Rule 21 to drop parties to cure a jurisdictional defect and conceivably even add parties to cure a jurisdictional defect. But what you can't do is simply switch out one party wholesale for another to cure that jurisdictional defect. I see that I do have some time left. You're not constitutionally required to use it. I'm sorry, Judge? You're not constitutionally required to use it. I know that, Judge, and that's why I'm simply going to say subject to any questions from the panel, I want to thank the court for its time and attention this morning. Thank you. Mr. Rice. Okay, you've got about a minute and a half. I'll point out that there is a second basis for personal jurisdiction, and that's the tort provisions, and the tort provisions specifically provide for a breach of fiduciary duty in the commission of a tort in the case. Finally, with respect to this idea that Brooke simply has become here, that the context the defendants initiate with the state are therefore ignored essentially takes everything back. It's a question of whether or not the state has an interest. It was invoked by the defendants when they tendered the contract to Illinois. Thank you. Thank you. The case is taken under advisement.